92 F.3d 1195
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Herbert WRIGHT, Defendant-Appellant.
 No. 95-50138.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1996.
Decided Aug. 2, 1996.
 
 Before: FLETCHER, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Herbert Wright appeals his conviction for conspiracy and possession with intent to distribute cocaine. 21 U.S.C. § 846. Although he pled guilty, he reserved the right to appeal the denial of his motion to dismiss the indictment. We affirm.
 
 FACTS
 
 3
 Wright was arrested by DEA agents in possession of 105 kilograms of cocaine. He waived his Miranda rights, confessed, and agreed to cooperate with the government by, among other things, making a controlled delivery of the cocaine. He contends that the DEA agents promised that he would be released and would not be prosecuted if he cooperated. He testified that the DEA agents "told me words to the effect that if I cooperated in that way and they did, in fact, apprehend people there, that I would be free to go, they didn't need me anymore and words to the effect that they wouldn't prosecute me." He testified that the agents did not tell him that his cooperation would be made known to the United States Attorney's Office, that they could not guarantee what kind of a sentence he would receive, or that he could be prosecuted in the future.
 
 
 4
 DEA Agents William Bodner and Kenneth Gunn stated that they informed Wright that "[i]f he cooperated, his cooperation would be brought to the attention of the U.S. Attorney's Office but that we could not promise what sentence he would receive.... At no time did I or any other DEA agent tell defendant that he would not be prosecuted if he cooperated."
 
 
 5
 Wright signed a form "Cooperating Individual Agreement" which did not address whether or not he could be prosecuted. Wright also signed a "Magistrate Waiver Form" which acknowledged that he could be prosecuted at a later date. He testified that he did not read the portion of the form which said that he could be prosecuted at a later date.
 
 
 6
 Subsequently, Wright made a controlled delivery of the cocaine to four individuals in New York and was released. Agent Bodner declares that he "made it clear to defendant that he was to continue cooperating with the government to assist us in dismantling the narcotics organization he worked for. Defendant was released at that time for the sole purpose of continuing his cooperation with the government."
 
 
 7
 Federal authorities arrested Wright's codefendant Jesse Santis in connection with an alleged conspiracy to distribute 310 kilograms of cocaine in Texas. Santis was indicted in Texas. After receiving information that the Texas indictment would be dismissed, Gunn recommended to an Assistant United States Attorney that Santis and Wright be indicted in California for the 105 kilogram cocaine delivery. On January 4, 1994, the present indictment was filed.
 
 
 8
 Wright filed a motion to dismiss the indictment, claiming that the government had promised not to prosecute him if he cooperated. The district court held an evidentiary hearing on Wright's motion. The court credited the testimony and declarations of the DEA agents, found that the government had not promised not to prosecute Wright, and therefore denied the motion to dismiss the indictment. Wright subsequently entered a conditional plea of guilty to count one of the indictment. He appeals from the district court's order denying his motion to dismiss the indictment.
 
 DISCUSSION
 
 9
 The government does not dispute that a DEA agent's promise not to prosecute as part of a cooperation agreement is enforceable against it. See United States v. Carrillo, 709 F.2d 35, 35-37 (1983) (affirming district court's dismissal of the indictment where DEA agents had promised not to prosecute the defendant if he cooperated); United States v. Irwin, 612 F.2d 1182, 1189 (9th Cir.1980) (The defendant contended "that he had entered into a postarrest dispositional agreement with [DEA] agent Wisdom to act as an undercover informant ... in exchange for a dismissal of the charges in this case.... The Government recognizes the enforceability of bargains of this nature ...") (footnote omitted); cf. Thomas v. INS, 35 F.3d 1332, 1338 (9th Cir.1994) ("The rule requiring compliance by the government with promises made during plea bargaining and analogous contexts generally requires that the agent be authorized to make the promise.). Rather, the government contends that no such promise was made. Like a plea agreement, "an agreement to cooperate may be analyzed in terms of contract law standards." Id. at 36. "What the parties agreed to is a question of fact to be resolved by the district court." United States v. Read, 778 F.2d 1437, 1441 (9th Cir.1985) (plea agreement) (internal quotation omitted), cert. denied, 479 U.S. 835 (1986); see also Carrillo, 709 F.2d at 37 (nature and scope of cooperation agreement is factual determination); United States v. Helmandollar, 852 F.2d 498, 501 (9th Cir.1988) (whether agents promised defendant probation is question of fact). The defendant has the burden of persuading the court of the existence of the agreement. Helmandollar, 852 F.2d at 502. The district court's findings as to the existence of and terms of the agreement are reviewed only for clear error. Read, 778 F.2d at 1441; Carrillo, 709 F.2d at 37; Helmandollar, 852 F.2d at 501. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings...." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985).
 
 
 10
 A. The District Court's Finding that the Government Did Not Promise Not to Prosecute Wright
 
 
 11
 The district court's finding that the government did not promise not to prosecute Wright if he cooperated is not clearly erroneous. Agent Gunn testified, and Agent Bodner declared, that neither he nor the other DEA agents made such a promise. Instead, they stated that they told Wright that they would make his cooperation known to the United States Attorney's Office but that they could not make any promises regarding his sentence. Bodner stated that he released Wright so that he could continue cooperating. Crediting this testimony, as the district court was entitled to do, the district court properly concluded that there was no agreement not to prosecute.[1]
 
 
 12
 Wright contends that the "Cooperating Individual Agreement" wholly contains his obligations toward the government, that all cooperation agreements should be in writing, and that ambiguities should be resolved in favor of criminal defendants. These arguments are beside the point. First, while it would have been preferable if the agents had set forth in writing their full understanding of the parties' respective obligations, Wright does not cite any authority for the proposition that all cooperation agreements must be in writing or that the "Cooperating Individual Agreement" is an integrated agreement. Even if there were such authority, this would not require dismissal of the indictment; the government may prosecute an individual reasonably believed to have violated the law regardless of whether there is a specific agreement that the government can prosecute. Finally, if the government witnesses' testimony is credited, there is no ambiguity: the government never promised not to prosecute Wright.
 
 
 13
 For these reasons, the district court did not clearly err in finding that the government did not promise not to prosecute Wright if Wright cooperated by making a controlled delivery of the cocaine.
 
 
 14
 B. Wright's Subjective Belief that He Would Not Be Prosecuted
 
 
 15
 Wright contends that even if the government agents never promised not to prosecute, he honestly believed that they did (based on their statements about releasing him and their actually releasing him), in reliance on that belief engaged in a risky controlled delivery of the cocaine, and therefore the government should be estopped from prosecuting him.
 
 
 16
 Wright cites no authority for the proposition that the government can be estopped from prosecuting a defendant merely because the defendant believed the government had agreed not to prosecute him. To the extent there was a misunderstanding by Wright or lack of mutual assent, at most this would mean that no agreement was formed or that Wright would be excused from performance. See John D. Calamari & Joseph M. Perillo, Contracts § 2-1 (mutual assent is a prerequisite to the formation of a contract); § 9-27 (avoidance occasionally permitted for unilateral mistake) (3d ed. 1987). It would not require the district court to rewrite the agreement to add a provision limiting the United States' ability to prosecute Wright.
 
 
 17
 Wright asserts that the government was "unjustly enriched" because it obtained Wright's cooperation without giving him anything in return. We disagree. The theory of unjust enrichment is that, although there is no actual contract, there is an obligation imposed by law to do justice which would support recovery. See id. §§ 1-12, 15-2. A defendant has no right to avoid prosecution merely because he cooperates with the government. While the government may have gotten the better end of the deal in this case, this does not itself constitute "unjust enrichment."
 
 
 18
 Moreover, Wright did receive a benefit for his cooperation. Due to Wright's participation in the controlled delivery, the government moved for a one-level downward departure for substantial assistance. Because the government moved for a downward departure, the district court was free to go below the mandatory minimum of 120 months. The court in fact departed downward the equivalent of five-levels to a sentence of 87 months, four years lower than the otherwise-applicable guideline sentencing range.
 
 
 19
 Wright further contends that the cooperation agreement was unconscionable because the government possessed all the bargaining power and he did not have an attorney. Again, we disagree. Wright was twice apprised in writing of his right to counsel, which he waived. There is no indication that he was coerced in any way. To the extent his options were limited, they were primarily limited by his own actions: he was caught in possession of 105 kilograms of cocaine. An agreement that a suspect will cooperate and assist the government on condition that his assistance will be brought to the attention of the United States Attorney's Office but no promises regarding sentence will be made is not one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Id. § 9-38 (describing unconscionability) (internal quotation omitted).
 
 
 20
 Finally, Wright contends that under principles of equitable estoppel, the government should be estopped from prosecuting him. Wright fails to meet the rigorous standard for imposing equitable estoppel against the government. See Watkins v. United States Army, 875 F.2d 699, 706 (9th Cir.1989) (en banc), cert. denied, 498 U.S. 957 (1990). In addition to satisfying the elements of traditional estoppel, Wright must also establish "affirmative misconduct going beyond mere negligence; even then estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." Id. at 707 (internal quotation omitted). Affirmative misconduct requires "an affirmative misrepresentation or affirmative concealment of a material fact by the government." Id. Crediting the agents' testimony that they never promised Wright that he would not be prosecuted and that they gave him a form stating that he could be prosecuted in the future, there was no affirmative misrepresentation or active concealment by the government. Accordingly, the government is not estopped from prosecuting Wright.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Magistrate Waiver Form provides further support for the district court's finding that the government never agreed not to prosecute Wright. That the agents gave Wright a form stating that he could be prosecuted in the future is evidence corroborating their testimony that they never told him that he would not be prosecuted if he cooperated